IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AMERICAN METALS & COAL
INTERNATIONAL, INC.,
a Delaware Corporation,

       Plaintiff,

v.

WHITE MOUNTAIN MINING CO., LLC
 a West Virginia Limited Liability Company,
*et. al.*

       Defendants, Counterclaimant
       and Third Party Plaintiff,

v.

AMERICAN METALS & COAL
INTERNATIONAL, INC. *et. al*
.

MOTION AND MEMORANDUM OF WHITE MOUNTAIN
MINING CO., LLC FOR PRE-TRIAL DETERMINATION
OF ISSUES REGARDING (A) LIMITATION OF EVIDENCE
FROM TRIAL COUNSEL, AND (B) STANDARD OF
DAMAGES REGARING PLAINTIFF'S CONTRACT
CLAIM AND RELATED MATTERS

     The Defendant, Counterclaimant and Third-Party Plaintiff, White Mountain Mining Co., LLC ("White Mountain") states the following for its motion and memorandum.

Introduction

     White Mountain did not originally intend to address pre-trial evidentiary issues or related issues of law. However, on the evening of Friday August 17, 2007, counsel for American Metals & Coal International, Inc. ("AMCI") circulated its proposed draft of its portion of a PreTrial Order (due August 24, 2007). Counsel for White Mountain did not have a meaningful opportunity to review the contents of the same until Tuesday, August 21, 2007. Upon review of

specific matters raised by AMCI in the draft Pretrial Order, White Mountain has determined that several intended or potential evidentiary issues need to be addressed in advance of trial.

## Measure of Contract Damages

AMCI seeks damages for the failure of White Mountain to ship coal on a coal sales contract that AMCI's alleges was formed during White Mountain's bankruptcy. This contract and the legal issues regarding AMCI's ability to enforce the same are the subject of pending reciprocal summary judgments motions. Beyond the legal issues presented by the dispositive motions, White Mountain believes no contract was ever formed for the sale of export coal to AMCI as is alleged in the Complaint. However, absent a ruling by the Court that such an arrangement is not enforceable as a matter of law, White Mountain must prepare for trial under the assumption that AMCI will attempt to present evidence that a contract was formed and that it suffered damages by the fact that no coal was shipped on the contract.

AMCI appears to be taking the position that AMCI's potential damages are based upon a specified export contract that AMCI's principal, Hans Mende, claims AMCI had an oral agreement to fill for a company affiliated with Mende.[1] In addition, Mr. Mende likewise has presumed his measure of damages is based on the same isolated export contract. White Mountain seeks a ruling that AMCI's damages approach is impermissible as a measure of contract damages under the UCC. Rather, because AMCI did not procure cover coal, its sole measure of damages is contract price versus market price. Accordingly, testimony of the price under an isolated export contract bears no relevance to any true measure of damages and should be excluded.

---

[1] The portion of the AMCI draft pre-trial order states in explaining their case that, "The uncontroverted evidence shows that, had White Mountain/Apache performed its obligation under this contract, AMCI could have resold the tendered coal for at $110 per ton F.O.B. the mine, with a net profit of $40 per ton. Ex. 5 (Depo. of H. Mende, p. 99). The 60,000 ton shortfall, multiplied by the $40 per ton expected profit, provides a net loss of $2,400,000, excluding interest." Mende has testified in the deposition referenced by AMCI that the company to which he would have sold the coal to make the $40 ton profit was a subsidiary or affiliate of a company known as Alpha Natural Resources. At the time, Mende of the alleged contract Mende was chairman of the board of directors of Alpha Natural Resources. In supplying the coal, Mende said Alpha would retain only a dollar on the sale while the other large profit claimed would be retained by Mende's company, AMCI.

W. Va. Code §46-2-711 codifies the Uniform Commercial Code's listing of possible damages for a buyer of goods. The statute effectively provides an aggrieved buyer with two options – cover damages or market damages under §713.[2] Hans Mende, president of AMCI established in his deposition that AMCI did not purchase cover coal. Hans Mende Deposition Trasncript at p. 96. Accordingly, the only remaining measure of damages under West Virginia's codification of the UCC is §46-2-713.

The statute provides as follows:

§46-2-713. Buyer's damages for nondelivery or repudiation.

(1) Subject to the provisions of this article with respect to proof of market price (section 2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 2- 715), but less expenses saved in consequence of the seller's breach.

(2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

*Id*.  Neither the foregoing provision nor any authority known to White Mountain permits a party that has not covered to submit evidence of an isolated contract as a method of establishing damages for a breach of contract for the sale of goods. In fact, there is contrary authority. *See TexPar Energy v. Murphy Oil USA*, 45 F.3d 1111, 1113 (7th Cir. 1995) (Court refused to supplant market damages under UCC §2-713 with an "expectancy" measure of damages). Accordingly, the Court should determine as a part of pre-trial proceedings that AMCI may not assert its single contract or expectancy damage theory or evidence related thereto.

---

[2] W. Va. Code §46-2-711 states in pertinent part:  (1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or (b) recover damages for nondelivery as provided in this article (section 2-713).

Case 2:05-cv-00822   Document 89   Filed 08/22/07   Page 4 of 7 PageID #: 1019

The same rationale applies with respect to AMCI's retained coal sales expert, Daniel Selby. In a preliminary report provided by AMCI, White Mountain was informed that Selby would be offering expert testimony as to market value, per the requirements of W. Va. Code §46-2-713. AMCI had agreed to present Mr. Selby for his deposition on August 14, 2007, but cancelled the deposition the day before the deposition. However, based on the pre-trial order position of AMCI it now appears that AMCI intends to have Selby measure damages through the same isolated export contract that Mr. Mende claims to have had the ability to fill based upon a verbal agreement with an affiliated company. For the same reasons set forth above, the Court should rule that Mr. Selby's testimony may not include use of an isolated export contract or contracts in an attempt to offer expert testimony.

White Mountain has no objection to Mr. Selby testifying as to actual market price as contemplated under the express provisions of W. Va. Code §46-2-713 if he can lay a foundation and expertise to establish the same. White Mountain's point is simply that market price under the UCC means precisely that – market price. The market price of any good is not necessarily that expressed in a single contract, the highest price anyone has paid for the good nor the lowest price paid. Rather, countless authorities establish that a market price of a good is the price that would be agreed upon by an unrelated willing buyer and seller that are free of other influences. *See e.g. Petroleum Exploration v. United States*, 404 F. Supp. 93, 96-97 (D. W. Va. 1975)

The AMCI claim of an oral contract to provide all the coal to an affiliated entity contract where the other entity would retain almost no profit is suspicious and difficult to believe. However, one does not have to leap over that credibility hurdle when it is determined that such evidence is inconsistent with the measure of damages provided by law. If AMCI wanted to fix amounts under a particular contract it needed to cover by buying other coal and supplying the contract of a third party with which it had an oral agreement to fill. Since it did not, AMCI is bound by the measures of damages as are set forth in West Virginia's codification of the UCC.

Designation of White Mountain Counsel as a Potential Witness

The recent circulation of AMCI's draft pretrial order was the first concrete indication White Mountain has that AMCI intended, at least potentially intended, to call John A. Rollins, lead counsel for White Mountain as a witness. The designation presumably stems from an email generated by Mr. Rollins in 2003 that makes a statement to one of White Mountain's secured creditor's counsel that White Mountain believed AMCI had diverted coal sales from one party and re-sold the coal to another party at higher prices. First, AMCI has not designated the email in question as a potential trial exhibit. Second, to the extent AMCI would intend to question Mr. Rollins about information he possesses, specifics of any such knowledge are clearly and unequivocally protected by the attorney-client privilege.

AMCI apparently wishes to use the subject email as evidence that White Mountain had suspicions in the past that AMCI had fraudulently diverted White Mountain coal in order to establish the judicial estoppel theory set forth in its pending summary judgment motion that White Mountain had not formally raised the matter in its bankruptcy. Obviously, the Court's determination of this issue may moot the issue posed by this motion. However, absent a dispositive determination on the issue for one party or the other, the matter may be relevant at trial on the limited estoppel theory advanced.

If the purpose of calling Mr. Rollins is authenticating the email, then White Mountain will stipulate as to the authenticity of the subject email. On the other hand, if the intent is to inquire as to background and information that lead to the statements in the email, the questions will necessitate the assertion of attorney client privilege. This scenario will have the effect of further complicating an otherwise extremely complicated matter and serve to prejudice White Mountain before a jury. While it is theoretically possible that AMCI could pose a question to Mr. Rollins beyond identification of the document that would not lead to this problem, it is difficult to imagine such a question. However, even if some limited, admissible examination could be

elicited its probative value will be outweighed by the prejudice that would ensue by placing counsel on the stand or forcing a substitution of counsel at this late date. Accordingly, the Court should consider the specifics of the issue in a hearing held prior to trial so that a finding could be made as contemplated by FRE 403.

WHEREFORE White Mountain request that the Court enter an order

(a) establishing the measure of contract damages in connection with the so-called export contract is the difference between contract price and market value and prohibit any lay or expert evidence relating to the assertion of damages based on a single contract, expectancy damages or any other standard other than that provided by the UCC;

(b) hold an in camera hearing prior to trial to determine whether counsel for White Mountain may be called as a witness at trial; and

(c) granting such other and further relief as the Court deems appropriate.

>                                WHITE MOUNTAIN MINIG CO., LLC
>                                By Counsel

LEWIS, GLASSER, CASEY
 & ROLLINS, PLLC

/s/ Spencer D. Elliott
John A. Rollins, WV Bar #3165
Spencer D. Elliott, WV Bar #8064
P.O. Box 1746
Charleston, WV 25326
(304) 345-2000

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 22, 2007 he served the foregoing on the persons hereafter set forth by First Class United States Mail, postage pre-paid, to the address noted and/or by electronic service.

>Chris Morris
>Bailey & Glasser, LLP
>227 Capitol Street
>Charleston, WV 25301
>
>Mark Troy
>Bailey & Wyant, PLLC
>P.O. Box 3710
>Charleston, WV 25337-3710

>/s/ Spencer D. Elliott