IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

AMERICAN METALS & COAL
INTERNATIONAL, INC., a Delaware Corporation,

   Plaintiff,

v.

WHITE MOUNTAIN MINING CO., LLC
a West Virginia Limited Liability Company,
APACHE MINING CO, LLC
a West Virginia Limited Liability Company,

   Defendants,         Civil Action No. 2:05-0822

WHITE MOUNTAIN MINING CO., LLC
a West Virginia Limited Liability Company,

   Counterclaimant and Third
   Party Plaintiff,

v.

AMERICAN METALS & COAL
INTERNATIONAL, INC., a corporation;
AMERICAN METALLURGICAL COAL
SALES, L.L.C., a limited liability company;
and SCM, INC., a corporation

   Counterclaim and Third Party Defendants,

SCM, INC., a corporation,

   Counterclaimant and Third Party Plaintiff,

v.

WHITE MOUNTAIN MINING CO., LLC
a West Virginia Limited Liability Company,
APACHE MINING CO., LLC
a West Virginia Limited Liability Company,

   Counterclaim and Third Party Defendants.

# INTEGRATED PRETRIAL ORDER

1. **Pretrial Disclosures Required by Federal Rule Civil Procedure 26(a)(3) and Any Objections Thereto**

    a. AMCI

    AMCI's intended and potential witnesses are identified on the attached witness list, with a designation of such witnesses whose testimony may be presented through deposition. AMCI's intended and potential exhibits are identified on the attached exhibit list.

    b. AMCS and SCM

    AMCS and SCM hereby adopt and incorporate herein by reference those intended and potential witnesses identified on AMCI's attached witness list. This list includes a designation of such witnesses whose testimony may be presented through deposition. AMCS and SCM also adopt and incorporate herein by reference those intended and potential exhibits identified on the attached exhibit list of AMCI, with the addition of the June 19, 2003, email from Attorney John Rollins to Tim Krieger regarding a motion pending in the White Mountain Bankruptcy proceeding, which is an intended exhibit of these defendants.

    c. White Mountain Mining Company

    White Mountain's intended and potential witnesses are identified on the attached witness list, with a designation of such witnesses whose testimony may be presented through deposition. White Mountain's intended and potential exhibits are identified on the attached exhibit list.


2. **Contested Issues of Law Requiring a Ruling Before Trial**

    Pending issues of law which require ruling before the trial of this matter include all the legal issues raised and briefed in the following filings and responses thereto:

    - Motion by White Mountain Mining Co., LLC for Partial Summary Judgment together with supporting memoranda (WM SJ Brief).

    - Joint Motion by American Metals & Coal International, Inc., American Metallurgical Coal Sales, LLC, SCM, Inc. for Summary Judgment together with supporting memoranda (AMCI SJ Brief).

    - Motion and Memorandum of White Mountain Mining Co., LLC for Pre-Trial Determination of Issues Regarding (a) Limitation of Evidence from Trial Counsel, and (b) Standard of Damages Regarding Plaintiff's Contract Claim and Related Matters.

3. **Statement of Essential Elements of Claims and Defenses**

    a. AMCI

- Breach of Contract against White Mountain

    1. Existence of a contract for sale of goods. W. Va. Code § 46-2-106; W. Va. Code § 46-2-204; W. Va. Code § 46-2-206

    2. Seller tenders nonconforming installment or installments or defaults on installment and the default or nonconforming installment or installments substantially impairs the value of the whole contract. W.Va. Code § 46-2-612(3).

    3. Damages. W.Va. Code § 46-2-711(1)(b); W.Va. Code § 46-2-713; W.Va. Code § 46-2-723; W.Va. Code § 46-2-715.

- Defenses against WMM Claims (in addition to failure of proof)

    1. Judicial estoppel: The elements of judicial estoppel are: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. *Id.* at 1217; *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), cert. denied, 519 U.S. 113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

    b. AMCS and SCM

- SCM—Breach of Contract against White Mountain

    1. Existence of a contract for sale of goods. W. Va. Code § 46-2-106; W. Va. Code § 46-2-204; W. Va. Code § 46-2-206

    2. Seller tenders nonconforming installment or installments or defaults on installment and the default or nonconforming installment or installments substantially impairs the value of the whole contract. W.Va. Code § 46-2-612(3).

    3. Damages. W.Va. Code § 46-2-711(1)(b); W.Va. Code § 46-2-713; W.Va. Code § 46-2-723; W.Va. Code § 46-2-715.

- SCM—Defenses (in addition to failure of proof)

    1. Judicial estoppel: The elements of judicial estoppel are: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position during previous litigation; (2) the

  position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. *Id.* at 1217; *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), cert. denied, 519 U.S. 113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

- AMCS—Defenses (in addition to failure of proof)

  1. Judicial estoppel: The elements of judicial estoppel are: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. *Id.* at 1217; *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), cert. denied, 519 U.S. 113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

c. White Mountain

- Claims for breach of contract against AMCS, SCM and AMCI

  1. Existence of a contract for services of coal sales agency.

  2. Breach of duty under contract to sell coal for sales available to agent.

  3. Damages by agent selling coal for its own account and retaining proceeds.

- Claims for actual fraud by AMCS, SCM and AMCI

  1. Act or representation of material fact regarding sales price of coal or available coal sales.

  2. Representation or act was false and made with intent to deceive.

  3. Justifiable reliance by party misled on representation or act.

  4. Damages as a proximate result.

  5. Damages include not only compensatory damages but punitive damages and attorney fees given the intentional fraud.

  *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981); *Miller v. Miller*, 216 W. Va. 720, 724 (W. Va. 2005)

- Claim for breach of fiduciary duty against AMCS, SCM and AMCI

    1. Establishment of agency relationship by sales agency relationship for the sale of coal.

    2. Breach of duty by agent taking advantage of his position as agent for principal or advances his own interests above those of his principal.

    3. Damages as a proximate result of the breach.

    *Restatement (Second) of Agency* § 1(1) (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") An agent breaches the fiduciary duty of agency when he takes advantage of his position as agent, *Restatement (Second) of Agency* § 387, comment b (1958), or else when he advances his own interest to the detriment of the principal's interest. *Id.* § 401.

- Claim for equitable remedy for recovery on each of the above claims to hold AMCI liable for conduct of SCM based on doctrines of instrumentality, piercing corporate veil, or alter ego.

    1. Unity of interest and ownership that the separate personalities of the corporations and owner no longer exist; or

    2. Subsidiary or affiliate corporation totally controlled by parent or common owner; and

    3. Foregoing used to commit fraud, shield assets or exist to create inequitable result if the acts are treated as those of the corporation alone.

    *Laya v. Erin Homes, Inc.*, 177 W. Va. 343; 352 S.E.2d 93 (1986); *Southern Electrical Supply Co. v. Raleigh County National Bank,* 173 W. Va. 780 , 320 S.E.2d 515, 523 (1984); *Keffer v. Connors Steel Co. ,* 1988 U.S. Dist. LEXIS 17122 (D. W. Va. 1988); *William C. Atwater & Co. v. Fall River Pocahontas Collieries Co.,* 119 W. Va. 549, 561 (W. Va. 1937)

- Defenses

    Claim of AMCI

1. Estoppel and *res judicata* as alleged contract not approved by Bankruptcy Court and contrary to plan of reorganization approved by order of bankruptcy court.

See authority cited WM SJ Brief.

2. The parties did not form a contract.

3. There was no justifiable reliance on authority of the agent of White Mountain based on notice to the AMCI of the White Mountain understanding of contract set forth in noticed terms of the plan of reorganization and course of conduct of parties where written contract approval by White Mountain's was made on coal sales.

See authority cited WM SJ Brief.

4. Right of setoff based upon affirmative claims of White Mountain.

*Johnson's Ex'rs v. Johnson's Heirs*, 83 W. Va. 593, 597 (W. Va. 1919).

5. Failure to mitigate damages by enacting cover or shipment of coal by related parties whose contract is sought to be relied upon.

See authority cited WM SJ Brief.

Claim of SCM

1. Setoff based upon affirmative claims of White Mountain.

2. Purchaser of coal did not accept all shipments.

3. Damages limited by liquidated damage clause.

*Stonebraker v. Zinn*, 169 W. Va. 259, 262-263 (W. Va. 1982).
Also see authority cited WM SJ Brief.

**4.      Summary of Material Facts and Theories of Liability or Defense**

    a. AMCI

In or about June of 2003, Winding Gulf Coal Sales was formed to market White Mountain's coal and to sell independently produced metallurgical coals. Andrew Fry was the manager of Winding Gulf Coal Sales and actually functioned as agent for White Mountain and concluded the contracts for sale of its coal. Winding Gulf and Fry had the direct authority of Joe Phillips to enter into contracts for the sale of White Mountain coal.

By February of 2004, the parties to a certain piece of litigation in West Virginia state court, including Wheeling Pitt Steel, AMCS, and SCM, Inc., had begun to discuss the resolution

of that litigation by agreement. The broad parameters of the potential settlement were to involve the sale of metallurgical coal to WPS by Metcoal Sales and cash payments to AMCI entities in return. The coal was to be production from White Mountain, now marketed by Andrew Fry through Winding Gulf Coal Sales. The general terms under which the WPS/AMCS/SCM litigation was to be resolved were that (1) WPS would drop its counterclaims against AMCI entities, (2) WPS would pay approximately $400,000 due to AMCS/SCM for coal delivered in 2001 but not paid for, (3) White Mountain/Apache/Winding Gulf agreed to provide 60,000 tons of White Mountain coal to AMCI's selected entity at $60 per ton, (4) AMCI's selected entity would provide the same 60,000 tons to WPS at $65 per ton, (5) White Mountain would supply an additional 60,000 tons of White Mountain Coal to AMCI at $70 per ton, and (6) SCM would release a lien held on the East Gulf Prep Plant owned by White Mountain. At the time of the agreement to this global resolution, the value of the lien against the East Gulf Prep Plant was approximately $427,060 including interest. Ex. 18 (2/19/2004 Email from H. Mende to A. Fry, Bates # AMCI 000190). This global resolution was finalized by four documents dated March 1, 2004:

> (1) A Settlement Agreement and Mutual Release between WPS, SCM, and AMCS which provided that WPS would pay to SCM $406,607.40 in three installments. The first installment of $135,535.80 was to be paid on or before March 26, 2004; the second installment of $135,535.80 was to be paid on or before April 30, 2004; and the final installment of $135,535.80 was to paid on the later of May 31, 2004 or the shipment of at least 25,000 tons of coal to WPS pursuant to a Sales Acknowledgement dated March 1, 2004, between WPS and SCM.
>
> (2) A Sales Acknowledgement labeled SCM 1-01-2004, which confirmed the purchase of 60,000 tons of White Mountain Coal from SCM by WPS at $65 per ton for delivery between March 2004 and December 2004. This document was signed by Paul Barbery, attorney for SCM and Art Hartline, representative of WPS.
>
> (3) A Sales Acknowledgement also labeled SCM 1-01-2004, which confirmed the purchase of the same 60,000 tons of White Mountain coal from Apache Mining Co., LLC by SCM at $60 per ton for delivery to WPS between March 2004 and December 2004. This document was signed by Paul Barbery, attorney for SCM, and Andrew Fry, sales agent for Apache by virtue of his role at Winding Gulf Coal Sales.
>
> (4) A Sales Acknowledgement labeled AMCI-02-2004 which confirmed the purchase of an additional 60,000 tons of White Mountain coal from Apache Mining Co., LLC, by AMCI at $70 per ton for delivery to the NS Coal Terminal at Lambert's Point, Virginia (a port where export coal is loaded onto vessels). Ex. 22 (Depo. Ex. 36A). This document did not have hand signatures affixed by the parties thereto, but was forwarded from Andrew Fry to Hans Mende, Paul Barbery, and Josef Ehrengruber by email. Ex. 23 (Depo. Ex. 37, Email of 3/3/04 from A. Fry, Bates # AMCI0001650).

The lien on the East Gulf prep plant was released pursuant to the global agreement.

Regarding the 60,000 ton export agreement between White Mountain and AMCI, White Mountain/Apache's failure of performance was total. No tons were shipped under this contract at any point, in part because Phillips refused to allow Fry to do so.

The uncontroverted evidence shows that, had White Mountain/Apache performed its obligation under this contract, AMCI could have resold the tendered coal for at $110 per ton F.O.B. the mine, with a net profit of $40 per ton. Ex. 5 (Depo. of H. Mende, p. 99). The 60,000 ton shortfall, multiplied by the $40 per ton expected profit, provides a net loss of $2,400,000, excluding interest.

    b. AMCS and SCM

- Claims—SCM

SCM's claim against White Mountain sounds in the domestic contract designed to support SCM's sale of coal to WPS. In addition to the facts set forth above, on March 23, 2004, an additional document was executed by Paul Barbery on behalf of SCM and by Andrew Fry on behalf of White Mountain/Apache. This document is entitled "Sales Acknowledgement Between SCM, Inc., Buyer, and Winding Gulf Coal Sales Co., LLC, Agent for Apache Mining Co., LLC, Seller -- Other Terms and Conditions." At paragraph 13, entitled Other Conditions, this document refers to the release of the lien on the East Gulf prep plant and provides that, in the event of White Mountain/Apache's default, White/Mountain will pay SCM $5.44 per ton not delivered as liquidated damages.

The evidence has shown incontrovertibly that White Mountain failed to meet its obligations under the two contracts at issue. Regarding the domestic contract involving sales to SCM for resale to WPS, both Joe Phillips and Andrew Fry testified that they did not meet their obligations. The total shortfall of coal under this agreement was 42,257.95 tons, which, when multiplied by the agreed liquidated damages figure of $5.44 per ton, yields a base damages figure of $229,883.25. SCM has suffered additional consequential and incidental damages, specifically including a payment of $135,535.80 which never came due under the WPS settlement agreement as a result of White Mountain's failures.

- Defenses—SCM – See Item No. 3 (b), above.

    c. White Mountain Mining Company

- Claims against AMCS, SCM

AMCS and SCM served as coal sales agents of White Mountain's coal mined and sold in 2001 pursuant to the terms of sales agency agreements. See AMCI Exhibits 8 and 11, JDE 1B and 1C, respectively. White Mountain asserts that both of these entities over the course of 2001 breached the terms of the coal sales agency agreements and committed actual fraud by making secret sales of White Mountain coal and retaining the profit.

The sales agency agreements provide specific duties for the sales agents in terms transparency and obtaining the highest sales price. The AMCS agreement stated that, "AMCS guarantees to Producer [White Mountain] that the coal sold hereunder by AMCS shall be sold at

prices and terms no less favorable than enjoyed by AMCS or its affiliates . . .". The joint sales agency agreement with White Mountain, AMCS and Metcoal states, in pertinent part:

> MCS shall use its best efforts to market Producer's Coal and obtain CSA's [coal sale agreements] for the Producer's coal to be sold hereunder at the highest possible sale prices and at the best terms and conditions, acceptable to producer, to allow Producer to operate continuously at previously agreed upon tonnage levels to maximize Producer's production and financial results.
>
> \*\*\*
>
> Whenever the marketing of a "similar" low volatile coking coal as defined above is concerned, MCS shall fully inform Producer of the tonnages and sales prices it is offering to potential customers of its own as well as Producer's Coal.
>
> \*\*\*
>
> To accomplish the above and to allow Producer to make a fully informed judgment that its Coal is presented and marketed by MSC in a fair and equitable manner when MCS is marketing a "similar" low volatile to the same or other customers (either as a stand-alone product or blended with other products), it is agreed upon that MCS will fully disclose to Producer all prices, offers and terms and conditions for all coal sold or offered by MSC (including but not limited to the Coal) to such potential customers.

AMCS and SCM coal sales documentation produced in discovery establish that approximately 118,000 tons of White Mountain coal was shipped to SCM's Wheelersburg coal blending facility and that AMCS invoiced SCM $36.00 per ton for such coal and such sums were remitted to White Mountain. The records further established that SCM sold 15,917.95 tons of White Mountain coal to Wheeling Pitt at an increased price of 41.50 per ton. SCM and/or AMCS retained both the 3% commission from the sales and the net profit above the $36.00 per ton figure without informing White Mountain and without remitting the excess profit to White Mountain.

The records produced also establish that SCM sold 53,007.19 tons of White Mountain coal to Dofasco, Inc. at an increased price of $43.00 per ton. Again, SCM and/or AMCS retained both the 3% commission from the sale and the net profit above the $36.00 per ton figure without informing White Mountain and without remitting the excess profit to White Mountain.

White Mountain's expert will testify that secret profits retained by SCM and AMCS led to compensatory damages of $459,222 and pre-judgment interest to April 12, 2007of an additional $259,136. Given the intentional fraud, White Mountain also seeks punitive damages and attorney fees.

White Mountain also asserts that AMCI is liable for the conduct of its ultimate subsidiary, SCM and its affiliate AMCS under equitable relief awarded under the instrumentality, corporate veil piercing or alter ego doctrines. The principal persons that controlled each of the entities were the same – Hans Mende, Josef Ehrengruber and Andy Fry. The parties were represented by a single lawyer, Paul Barbery. All of the financing of the

operations occurred through a single credit facility at PNC Bank in Pittsburgh. All major decisions of any of the companies had to be made by Mr. Mende or the other co-owner of AMCI, Fritz Kundrun. AMCS and SCM showed no corporate governance records of any detail. AMCI conduct showed intent to create entities to avoid liability. Coal sales matters that were addressed by SCM in this case were in the year before the 2001 were conducted by AMCI Coal Sales, LLC, a subsidiary of AMCI. After AMCI and AMCI Coal Sales, LLC were sued by other bankruptcy customers for breaching their sales agency agreement and the Office of Surface Mining sought to impose penalties for their control of funds of such entities, AMCS was created. AMCS started in the same office with the same employees, location and financing with no capitalization. The owner of the new company was not AMCI or its subsidiaries, but the various owners and managing officers of AMCI.

Counter to SCM's Judicial Estoppel Defense. SCM has raised judicial estoppel as a defense to the 2001 coal sales claims stating White Mountain failed to list such cause of action on its bankruptcy schedules or otherwise raise or prosecute it during the pendency of the bankruptcy. The legal matters regarding this issue are raised in the WM SJ Brief. Further, the theory of SCM is based on the assumption that the entity filing the bankruptcy schedules was the same entity that is a party in this action. While the parties bear the same name, the White Mountain that was the debtor in the bankruptcy filing the schedules and the party in this action created under the bankruptcy plan of reorganization are wholly different legal entities with separate incorporations. As a result, the same party element for the judicial estoppel is not satisfied as a matter of law.

- Defenses

SCM– The Domestic Order. Under bankruptcy court approval and the terms of the White Mountain plan of reorganization, White Mountain agreed to the shipment of coal to Wheeling Pittsburgh Steel. White Mountain did not ship all of the tonnage due on the order. However, the damages or right to judgment claimed by SCM are limited by reason of the fact that: (1) there is a right of setoff given the fraud and other claims against SCM in 2001: (2) the domestic order contains a liquidated damages clause of $5.44 per ton; and (3) the amounts due to SCM only came due when coal was to be shipped to Wheeling Pittsburgh Steel and such purchaser asked that certain tonnage not be shipped.

AMCI Breach– The Export Order. The WM SJ Motion sets forth the estoppel and *res judicata* defenses and factual circumstances prevent enforcement of the alleged Export Order as a matter of law. AMCI has asserted through its principal Hans Mende that the Export Order and Domestic Order where a single transaction and that White Mountain's coal sales agent, Andrew Fry admitted such an agreement was formed. Beyond the legal limitations arising under bankruptcy law by the failure of anyone to notify the bankruptcy court or creditors, White Mountain denies that the Export Order was ever agreed upon or even known to it. This is borne out in the email communications between Fry and Mende that, unlike the Domestic Contract, were never communicated to White Mountain or its counsel. In fact, White Mountain's president, Joseph Phillips had no knowledge of the Export Order and did not approve the same. Under company policy at the time of the alleged Export Order, all coal sales contracts of White Mountain were approved by him and executed by an officer of White Mountain, just as was done in the case of the Domestic Order.

The reasonableness of the alleged reliance placed by AMCI of the apparent authority of Fry is negated by the fact that the bankruptcy plan that was noticed to AMCI only sets forth the Domestic Order and did not contain any mention of the Export Contract even though AMCI asserts the Export Contract was coupled with the Domestic Contract. Further, Mende knew of the issues of court approval as indicated in his email to Fry at the time. The fact that the Domestic Order was noticed to parties and signed by White Mountain speaks volumes regarding whether AMCI could assume that Fry had the authority to ignore this same approval and execution process in the case of the Export Order.

Finally, in the event AMCI is ultimately permitted to present evidence on the existence of the Export Order, White Mountain takes issue with AMCI's intended methodology for computation of damages. However, those issues are addressed separately in the Motion and Memorandum of White Mountain Mining Co., LLC for Pre-Trial Determination of Issues Regarding (a) Limitation of Evidence from Trial Counsel, and (b) Standard of Damages Regarding Plaintiff's Contract Claim and Related Matters.

**5.    Contested Issues of Fact and Law**

    a.  AMCI, AMCS, and SCM

- Factual Issues

AMCI, AMCS, and SCM believe that the contested issues of fact are few in this matter, as evidenced in part by the parties' cross-motions for summary judgment. One particular factual issue present in this matter is whether Andrew Fry had the express consent of White Mountain, in addition to apparent authority, to enter into the export contract with AMCI.

As to WMM's counterclaims, a number of issues of fact remain for determination should the Court rule that WMM is not judicially estopped from bringing those claims, including the ultimate destination, price, and specification of any coal allegedly diverted in breach of the agency agreement at issue.

- Legal Issues

The legal issues remaining in dispute in this matter are most clearly framed in the parties' respective motions for summary judgment and responsive briefs thereto

    b.  White Mountain Mining Company

White Mountain concurs that a number of issues that are raised in the summary judgment pleadings involve pending legal questions:

1.    Whether the Export order is void as a matter of law for failure to comply with the provisions of 11 U.S.C. 363 and/or FRBP 9011 for failure to provide notice and a hearing for approval of a transaction that called for a compromise of a pre-petition secured claim through the use of post-petition bankruptcy estate property;

      2.      Whether judicial estoppel can be applied to White Mountain as a matter of law as a defense to its claims for breach of sales agency agreement, breach of fiduciary duty and fraud arising out of the 2001 coal sales transactions.

      3.      Whether SCM is entitled to claim both liquidated damages under the terms and conditions agreement accompanying the Domestic Order and recovery of the $135,000 third installment due from Wheeling Pittsburg Steel;

      4.      Whether White Mountain is entitled to setoff any potential liability to SCM arising from the Domestic Order against any potential liability AMCS/SCM have to White Mountain for the 2001 coal sales agency, fiduciary duty and fraud claims.

To the extent the Court declines to rule on any summary judgment pleadings or issues, a number of factual disputes will remain to be determined at trial, including, but not limited to, (i) factual disputes surrounding the nature and extent of AMCS's and SCM's sale of White Mountain coal to third parties in 2001 and whether the AMCI parties possessed the requisite intent to elevate their conduct to fraud, as well as the extent to which White Mountain was aware, pre-bankruptcy that it held a viable cause of action, and what, precisely, such a cause of action would encompass; (ii) the extent to which Wheeling Pittsburgh Steel refused shipment of any coal tendered under the Domestic Contract and the implications arising therefrom; (iii) whether the Export Contract was formed; and (iv) if the Export Contract was formed what are the damages based on market price of coal.

**6.**      **Stipulations**

      a.  AMCI, AMCS, and SCM

AMCI proposes that the parties stipulate to the authenticity, relevance, and admissibility of all documents tendered as deposition exhibits and summary judgment exhibits in this matter.

      b.  White Mountain Mining Company

White Mountain will stipulate authenticity of all documents and to the relevance and admissibility of certain documents in advance of trial.

**7.**      **Suggestions for Avoidance of Unnecessary Proof and Avoidance of Cumulative Evidence**

      a.  AMCI, AMCS, and SCM

See Stipulations, 6.a. above. AMCI further believes that the Court's ruling on the various summary judgment motions now pending will greatly streamline the presentation of issues at the trial of this matter.

      b.  White Mountain Mining Company

White Mountain will submit a proposed summary of certain coal sales transactions in 2001 under FRE 1006 to limit some of the many documents necessary to establish claims against AMCS and SCM.

8. **Suggestions Concerning Special Procedures**

    a. AMCI--None

    b. AMCS and SCM--None

    c. White Mountain Mining Company -- None

9. **Special Voir Dire Questions**

    a. AMCI, AMCS, and SCM

In addition to the Court's standard questions regarding knowledge of the parties, witnesses, and subject matter of the case, AMCI requests the following additional voir dire questions be propounded to the venire:

- Have any of you, your immediate family members, or your close friends worked in the coal industry? If so, in what capacity?

- Do any of you, your immediate family members, or your close friends own your own business?

- Do any of you, your immediate family members, or your close friends belong to a labor union?

    b. White Mountain Mining Company -- None

10. **Estimate of Trial Days Required**

    a. AMCI, AMCS, and SCM: 4 days for entire trial

    b. White Mountain Mining Company

       5 days for entire trial assuming an 8 hour day of court proceedings.

11. **Courtroom Technology Requested**

    a. AMCI -- None

    b. AMCS and SCM--None

    c. White Mountain Mining Company -- None

12. **Other Matters**

    a. AMCI – None

    b. AMCS and SCM—None

    c. White Mountain Mining Company

The parties have previously agreed to address by stipulation or motion an issue relating to identity of parties. SCM referred to in this case was previously named Metcoal Sales, Inc. before a name change to SCM, Inc. After this case commenced, SCM, Inc was merged with Redbank, II LLC and is now known as that entity. The parties need to address that a judgment for or against what has been referred to as SCM will be deemed applicable to the merged entity, Redbank, II.

AGREED TO AND APPROVED BY:

/s/ *Christopher S. Morris*
Brian A. Glasser (WVSB #6597)
Christopher S. Morris (WVSB #8004)
Bailey & Glasser, LLP
Counsel for AMCI

/s/ *Spencer D. Elliott*
John A. Rollins, Esq.
Spencer D. Elliott, Esq.
Lewis, Glasser, Casey & Rollins
Counsel for White Mountain Mining

/s/ *Mark E. Troy*
Charles R. Bailey, Esq.
Mark E. Troy, Esq.
Bailey & Wyant, PLLC
Counsel for SCM and AMCS

APPROVED AND ENTERED this _____ day of _____, 2007.

                                                                                  United States District Judge